**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**


TERRY LEE STACY

       Plaintiff,

v.                                     Case No.  3:18-cv-1410-J-MCR

COMMISSIONER OF THE SOCIAL
SECURITY ADMINISTRATION,

       Defendant.

_____/

## <u>MEMORANDUM OPINION AND ORDER</u>[1]

**THIS CAUSE** is before the Court on Plaintiff's appeal of an administrative

decision denying his application for a period of disability and disability insurance

benefits ("DIB").  Plaintiff filed his application for DIB on January 18, 2011,

alleging a disability onset date of March 25, 2011.[2]  (Tr. 32, 81, 86, 737-38.)

These claims were denied initially and on reconsideration.  The assigned

Administrative Law Judge ("ALJ"), Aaron M. Morgan, held a hearing on

September 25, 2012 at which Plaintiff was represented by an attorney.  (Tr. 22-

57.)  The ALJ found Plaintiff not disabled from March 25, 2011 through October

30, 2012, the date of the decision.  (Tr. 86-96.)  On March 19, 2014, the Appeals

---

[1] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge.  (Doc. 15.)

[2]  Plaintiff had to establish disability on or before December 31, 2014, his date last insured, in order to be entitled to a period of disability and DIB.  (Tr. 836.)

Council denied Plaintiff's request for review of ALJ Morgan's October 30, 2012

decision.  (Tr. 1-3.)  Plaintiff then filed a federal civil complaint, and, on June 3,

2015, this Court remanded the case to the Commissioner.[3]  (Tr. 806-18.)  On

June 30, 2015, the Appeals Council vacated the ALJ's October 30, 2012 decision

and remanded the case to an ALJ for further proceedings and with instructions

to, *inter alia*, consolidate Plaintiff's subsequent claim for Title II benefits filed on

May 2, 2014, provide Plaintiff with the opportunity to have another hearing,

create a single electronic record, and issue a new decision on the consolidated

claims.  (Tr. 821.)

On remand, the assigned ALJ, Kelley Fitzgerald, held a second hearing on

October 22, 2015, at which Plaintiff was again represented by counsel.  (Tr. 682-

725.)  On February 1, 2016, ALJ Fitzgerald issued a decision finding Plaintiff not

disabled from March 27, 2009, the alleged disability onset date, through

December 31, 2014, the date last insured.  (Tr. 834-46.)  On August 11, 2017,

the Appeals Council granted Plaintiff's request for review of the February 1, 2016

decision and vacated ALJ Fitzgerald's decision.[4]  (Tr. 858-60.)  On August 31,

---

[3] This Court reversed the Commissioner's decision pursuant to sentence four of 42 U.S.C. § 405(g), and remanded the case "with instructions to the ALJ to: (a) reconsider the opinions of Dr. Rocha, Dr. Risch, Dr. Ruffett, and Mr. Grissinger, explain what weight they [were] being accorded, and the reasons therefor; (b) reconsider the RFC assessment, if necessary; and (c) conduct any further proceedings deemed appropriate."  (Tr. 817.)

[4] The Appeals Council found, *inter alia*, that the ALJ's February 1, 2016 decision did not contain an adequate evaluation of all opinion evidence of record, including the opinions of Andrew Ruffett, Ph.D., State agency psychological consultants James Mendelson, Ph.D. and Richard Lyon, Ph.D., and the State agency medical consultants

2018, ALJ Fitzgerald held another hearing (Tr. 627-81), and on September 25, 2018, she issued a second opinion finding Plaintiff not disabled from March 25, 2011, the amended alleged onset date, through December 31, 2014, the date last insured (Tr. 601-15).

Plaintiff is appealing the Commissioner's final decision that he was not disabled during the relevant time period. Plaintiff has exhausted his available administrative remedies and the case is properly before the Court. (Tr. 599.) The Court has reviewed the record, the briefs, and the applicable law. For the reasons stated herein, the Commissioner's decision is **REVERSED and REMANDED**.

## I. Standard

The scope of this Court's review is limited to determining whether the Commissioner applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the Commissioner's findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). "Substantial evidence is more than a scintilla and is such relevant

---

P.S. Krishnamurthy, M.D. and Olga Garcia, M.D. (Tr. 858-59.) The Appeals Council specifically noted that the ALJ's February 1, 2016 decision "state[d] that Dr. Rocha 'performed a one-time examination at the request of the claimant's prior representative' on September 7, 2012," but pointed out that "Dr. Rocha also conducted a consultative examination of the claimant on April 12, 2011." (Tr. 859.) The Appeals Council determined that "[f]urther evaluation of the opinion evidence [was] warranted." (*Id.*) The Appeals Council also found that although the ALJ found "severe manipulative impairments, the decision's residual functional capacity ['RFC'] assessment [did] not contain any corresponding manipulative limitations," and determined that "[f]urther consideration of the claimant's maximum [RFC] assessment [was] warranted." (*Id.*)

evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995); *accord Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (stating that the court must scrutinize the entire record to determine the reasonableness of the Commissioner's factual findings).

## II.    Discussion

Plaintiff raises two issues on appeal. First, Plaintiff argues that the ALJ erred in failing to address or evaluate the medical opinions of Lily S. Rocha, M.D., J.D., an evaluating State agency medical expert, and the opinions of Benjamin Goh, D.O., Plaintiff's treating physician. (Doc. 19 at 7-13.) Second, Plaintiff argues that the ALJ failed to properly evaluate the medical opinions in accordance with the regulations. (*Id.* at 13.) Plaintiff requests that the Court issue a reversal with instructions for immediate calculation of past-due benefits based on the "extraordinary delay [that] has been caused by the ALJ's repeated errors in this case, particularly considering the Agency's continued failure to

4

properly evaluate the medical evidence of record despite repeatedly being

instructed to do so." (*Id.* at 6-7.)  Defendant responds that the ALJ's decision

that Plaintiff was not disabled is supported by substantial evidence.  (Doc. 23 at

4.)  Specifically, Defendant counters that the ALJ did not err in evaluating the

opinion evidence, the ALJ properly relied on the VE's testimony, and that Plaintiff

failed to establish disability beyond a doubt as required for the immediate award

of benefits.  (Doc. 23 at 4-27.)  The Court agrees with Plaintiff on the first issue,

therefore, does not address the remaining issues in detail.

### A.     Standard for Evaluating Opinion Evidence

The ALJ is required to consider all the evidence in the record when making

a disability determination. *See* 20 C.F.R. § 404.1520(a)(3).  With regard to

medical opinion evidence, "the ALJ must state with particularity the weight given

to different medical opinions and the reasons therefor."  *Winschel v. Comm'r of

Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011).  Substantial weight must be

given to a treating physician's opinion unless there is good cause to do

otherwise.  *See Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).

"'[G]ood cause' exists when the: (1) treating physician's opinion was not

bolstered by the evidence; (2) evidence supported a contrary finding; or (3)

treating physician's opinion was conclusory or inconsistent with the doctor's own

medical records."  *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004).

When a treating physician's opinion does not warrant controlling weight, the ALJ

must nevertheless weigh the medical opinion based on: (1) the length of the

treatment relationship and the frequency of examination, (2) the nature and extent of the treatment relationship, (3) the medical evidence supporting the opinion, (4) consistency of the medical opinion with the record as a whole, (5) specialization in the medical issues at issue, and (6) any other factors that tend to support or contradict the opinion. 20 C.F.R. § 404.1527(c)(2)-(6). "However, the ALJ is not required to explicitly address each of those factors. Rather, the ALJ must provide 'good cause' for rejecting a treating physician's medical opinions." *Lawton v. Comm'r of Soc. Sec.*, 431 F. App'x 830, 833 (11th Cir. 2011) (per curiam).

Although a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion, *see Wilson v. Heckler*, 734 F.2d 513, 518 (11th Cir. 1984) (per curiam), 20 C.F.R. § 404.1527(c)(2), "[t]he opinions of state agency physicians" can outweigh the contrary opinion of a treating physician if "that opinion has been properly discounted," *Cooper v. Astrue*, 2008 WL 649244, *3 (M.D. Fla. Mar. 10, 2008). Further, "the ALJ may reject any medical opinion if the evidence supports a contrary finding." *Wainwright v. Comm'r of Soc. Sec. Admin.*, 2007 WL 708971, at *2 (11th Cir. Mar. 9, 2007) (per curiam); *see also Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985) (per curiam) (same).

"The ALJ is required to consider the opinions of non-examining state agency medical and psychological consultants because they 'are highly qualified physicians and psychologists, who are also experts in Social Security disability evaluation.'" *Milner v. Barnhart*, 275 F. App'x 947, 948 (11th Cir. 2008) (per

curiam); *see also* SSR 96-6p (stating that the ALJ must treat the findings of State agency medical consultants as expert opinion evidence of non-examining sources). While the ALJ is not bound by the findings of non-examining physicians, the ALJ may not ignore these opinions and must explain the weight given to them in his decision. SSR 96-6p.

## B. Relevant Evidence of Record

### 1. Lily S. Rocha, M.D., J.D.

On April 12, 2011, Dr. Rocha examined Plaintiff for disability evaluation at the Commissioner's request. (Tr. 438-42.) She diagnosed lumbar spine pain, possibly disc disease, left elbow injury causing limited range of motion, bilateral shoulder pain with limited range of motion, sleep apnea, and sick sinus syndrome requiring the use of a pacemaker.[5] (Tr. 439.) Dr. Rocha noted Plaintiff had numbness in both hands, had been diagnosed with carpal tunnel syndrome, and had trouble gripping with his left hand. (*Id.*) Plaintiff's grip and fine dexterity were 5/5 on the right and 3/5 on the left. (*Id.*) His shoulder abduction was limited to 30 degrees, and the left shoulder internal external rotation was limited to 5 degrees. (*Id.*) Dr. Rocha noted that supination of the left forearm was only possible with flexion at the elbow and that there was "extensive scarring on the left elbow consistent with his history of surgery." (*Id.*) Straight leg raises were

---

[5] Dr. Rocha also noted that Plaintiff stated he "had what sound[ed] like a mylogram done of his spine, but [was] not aware of the diagnosis." (Tr. 438.) She also noted that "the mylogram had to be done and not an MRI because of his pacemaker." (*Id.*)

only possible to 40 degrees seated and were negligible in the supine position due to back pain. (*Id.*) Plaintiff's lumbar spine range of motion was 20 degrees due to back pain and paravertebral muscle spasm was noted along the lumbar spine. (*Id.*) Dr. Rocha noted Plaintiff had "trouble sitting, standing, and walking for any prolonged period of time because of lumbar pain." (Tr. 438.) Dr. Rocha also opined that Plaintiff's shoulder, elbow, and hip injuries, "along with poor sleep and [] chronic pain[,] hamper[ed] his ability to continue working."[6] (*Id.*)

On September 7, 2012, Dr. Rocha examined Plaintiff at his counsel's request. (Tr. 571-72.) She diagnosed lumbar spine pain, etiology unknown, left elbow injury, bilateral shoulder pain, and possible sick sinus syndrome. (Tr. 572.) She noted that Plaintiff complained more of his left elbow pain on this visit and noted that Plaintiff had open reduction internal fixation ("ORIF") surgery of the left elbow two years prior along with ulnar nerve transposition. (Tr. 571.) Dr. Rocha noted there was a limitation of abduction of the left shoulder to about 30 degrees and found Plaintiff had carpal tunnel syndrome on both wrists. (*Id.*) Plaintiff's left hand grip and fine dexterity was 4/5. (*Id.*) Plaintiff's straight leg raises were possible to 40 degrees in the seated position and 20 degrees in the supine position. (*Id.*) His lumbar spine range of motion was 20 degrees due to back pain. (Tr. 572.) Dr. Rocha noted Plaintiff had "problems sitting, standing, or walking because of his back pain." (Tr. 571.)

---

[6] Dr. Rocha noted that Plaintiff was working in the construction industry until he injured his left shoulder, left elbow, and left hip at work. (Tr. 438.)

On September 7, 2012, Dr. Rocha also completed a Physical RFC Questionnaire pertaining to Plaintiff. (Tr. 573-77.) Dr. Rocha opined that Plaintiff's impairments, including lower spine pain, left elbow pain, and shoulder pain, lasted or were expected to last at least twelve months. (Tr. 573.) She indicated, *inter alia*, that Plaintiff was not a malingerer; his pain and other symptoms would occasionally interfere with his attention and concentration; he was capable of low stress jobs, could sit for four hours and stand/walk for four hours in an eight-hour workday, could sit or stand for more than two hours at one time, could rarely lift 20 pounds and occasionally lift 10 or more pounds, could rarely climb ladders, and could occasionally twist, stoop (bend), crouch/squat, and climb stairs. (Tr. 574-76.) Dr. Rocha also opined that Plaintiff's left hand was limited to 80% use during an eight-hour workday with respect to grasping, turning, and twisting objects; the fingers of his left hand were limited to 80% use during an eight-hour workday with respect to fine manipulation; and use of his left arm was limited to 30% use during an eight-hour workday with respect to reaching, including overhead. (Tr. 576.) Dr. Rocha opined Plaintiff's impairments were likely to produce "good days" and "bad days." (*Id.*) She also opined that Plaintiff would likely be absent from work for more than four days per month as a result of his impairments or treatment. (*Id.*)

### 2. Benjamin Goh, D.O.

On March 17, 2011, Dr. Goh, Plaintiff's treating physician, completed a Treating Source Cardiac Questionnaire. (Tr. 432-34.) Dr. Goh confirmed that

Plaintiff had a recent cardiac event in 2005 and opined that Plaintiff could

perform "no exertional work" as a result of his cardiac condition. (Tr. 432.) Dr.

Goh also opined that Plaintiff experienced shortness of breath, severe fatigue,

and malaise related to his cardiac condition. (Tr. 433.) Dr. Goh also stated that

Plaintiff had a pacemaker and that "a current exercise (treadmill) cardiac stress

test was contraindicated per his cardiologist." (Tr. 433-34.)

On the same date, Dr. Goh also completed a Treating Source Orthopedic

Questionnaire regarding Plaintiff's orthopedic diagnosis of neuropathy. (Tr. 435-

36.) Dr. Goh noted Plaintiff experienced the following symptoms: decreased

hand strength; decreased ability to perform fine manipulation; decreased ability

to perform gross manipulation; chronic pain; and limited range of motion. (Tr.

436.) Dr. Goh also noted that Plaintiff presented with cervicalgia and lumbago.

(*Id.*) Dr. Goh rated Plaintiff's grip strength as 2/5, his lower extremity strength as

3/5, and opined that Plaintiff did not need a hand-held assistive device. (*Id.*) Dr.

Goh also appeared to opine that Plaintiff was incapable of fine/gross

manipulation due to neuropathy, but the reasons he provided are illegible. (*Id.*)

### C. The ALJ's Decision

At step two of the five-step sequential evaluation process,[7] the ALJ found

that Plaintiff had the following severe impairments: "left elbow osteoarthritis, a

history of right wrist fracture with malunion, hypertension, an organic mental

_____

[7] The Commissioner employs a five-step process in determining disability. *See* 20 C.F.R. § 404.1520(a)(4)(i)-(v).

disorder, an affective disorder, and an anxiety-related disorder." (Tr. 603

(internal citation omitted).)  At step three, the ALJ determined that Plaintiff did not

have an impairment or combination of impairments that met or medically equaled

the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P,

Appendix 1.  (Tr. 604.)

The ALJ then found that, through the date last insured, Plaintiff had the

RFC to perform light work, but with the following limitations:

> [T]he claimant can lift and carry 20 pounds occasionally and 10
> pounds frequently with both hands, and can lift and carry no more
> than 5 pounds occasionally with only one hand.  The claimant must
> never lift overhead.  The claimant can sit for about 6 hours in an 8-
> hour workday, and can stand and walk for about 6 hours each in an
> 8-hour workday.  The claimant must use a keyboard for no more
> than 30 minutes before having a 2-minute break.  The claimant must
> not perform forceful grasping, which is defined as use of a
> screwdriver, hammer, or jar that is stuck.  The claimant must never
> crawl or climb ladders, ropes, or scaffolds.  The claimant must have
> no exposure to moving machinery, unprotected heights, or extreme
> cold.  The claimant must perform no more than simple, routine, and
> repetitive tasks, and must have no more than occasional interaction
> with supervisors, co-workers, and the general public.

(Tr. 606.)  In making this RFC determination, the ALJ found that Plaintiff's

"medically determinable impairments could reasonably be expected to

cause the alleged symptoms; however, [Plaintiff's] statements concerning

the intensity, persistence[,] and limiting effects of th[e] symptoms [were]

not entirely consistent with the medical evidence and other evidence in the

record for the reasons explained in [the] decision."  (*Id.*)

In making these findings, the ALJ considered Plaintiff's statements

and testimony, the objective medical evidence, as well as the opinions of a

number of treating, examining, and non-examining sources.  (Tr. 606-12.)

In particular, the

ALJ summarized and evaluated the September 2012 examining opinion of Dr.

Rocha as follows:

> [I]n September 2012, [Plaintiff] was given a one-time physical
> examination by Lily Rocha, M.D., at the request of a prior
> representative.  Dr. Rocha's opinion indicated that he would likely be
> absent from work more than 4 days a month as a result of his
> impairments or treatment.  No significant weight is given to this
> opinion, as there is no definitive medically determinable impairment
> that persisted for any consecutive twelve-month period that would
> serve as a basis for the opined limitations.  Dr. Rocha's primary
> impression is lumbar spine pain of unknown etiology.  No weight is
> assigned to that impression as "pain" is not a medically determinable
> condition pursuant to the regulations.  The same analysis applies to
> her diagnosis of right shoulder pain.  The only remaining diagnosis is
> "possible" sick sinus syndrome, which was never actually diagnosed
> by Dr. Rocha or any other acceptable medical source.

(*Id.*)  In according little to no weight to Dr. Rocha's opinions, the ALJ noted that

Plaintiff "was seen at the emergency room the month following [the] examination

for a right wrist injury, and at that time he had a normal back examination with

normal range of motion, and there was no mention of back pain, shoulder pain,

or an elbow injury, or any mention of possible sick sinus syndrome (Exhibit

B43F/11)."  (*Id.*)

Upon review of the medical evidence, the ALJ determined that the

evidence did not establish that Plaintiff's impairments were disabling in nature or

prevented him from performing work in accordance with the RFC through the

date last insured. (Tr. 611.) The ALJ further explained:

> The record shows complaints of upper extremity difficulties, but the objective medical evidence of record through the date last insured does not establish a level of functional limitation that is work preclusive in nature. The evidence shows reduced range of motion of the right wrist and general osteoarthritis of the left elbow, but is otherwise largely negative. The record does not demonstrate significant deficits in grip strength or in upper extremity strength, and does not establish significant difficulties in using his hands and fingers to perform fine and gross manipulative tasks. Diagnostic imaging of record through the date last insured does not establish the presence of any condition that would have been expected to preclude all work. I also note that in November 2014, just prior to the date last insured, he reported that he was "doing ok" with no major symptoms or complaints (Exhibit B44F/14). Dr. Levine opined that he had no manipulative limitations apart from forceful grasping, overhead reaching, and extended keyboard use, and these limitations have been incorporated into the [RFC] assessment set forth above. The record shows evidence of hypertension, but does not associate this condition with substantial health complications or significant functional limitation.

(Tr. 611-12.) With respect to Plaintiff's mental impairments, the ALJ stated:

> [T]he record likewise does not show a level of functional limitation that would preclude all work. The evidence shows treatment for mental health symptoms, but does not indicate the continued presence of symptoms of such severity as to have prevented the performance of all work. Mental health examinations did not show significant abnormalities, and his GAF scores were primarily indicative of only moderate symptoms. The record does not establish significant abnormalities in cognitive functioning, reality perception, insight and judgment, violent ideation, or psychotic processes. Significant deficits in concentration and memory are also not established by the objective medical evidence of record. Taken as a whole, his impairments are not shown to have been productive of a level of functional limitation that precludes the performance of all basic work activities, as is required for a finding of disability.

(Tr. 612)  In accordance with the Appeals Council's request that the ALJ consider whether Plaintiff had manipulative limitations based on severe impairments resulting from left elbow osteoarthritis and a history of right wrist fracture, the ALJ noted that "[a]ll manipulative limitations that were identified by the medical expert, Dr. Levine, [had] been incorporated into the assessed [RFC]."  (*Id.*)

At step four, the ALJ determined that Plaintiff was unable to perform any past relevant work.  (Tr. 612-13.)  At step five, after considering Plaintiff's age, education, work experience, and RFC, as well as the testimony of the vocational expert ("VE"), the ALJ determined that there were jobs existing in significant numbers in the national economy that Plaintiff could perform such as fruit distributor, shipping and receiving weigher, and scale operator.  (Tr. 613-14.)  As noted in the ALJ's decision, all of these representative occupations are light and unskilled with an SVP of 2.  (Tr. 614.)

### D.    Analysis

Plaintiff argues that the ALJ erred in failing to mention or evaluate the April 2011 opinion of Dr. Rocha or the opinions of Dr. Goh, and that these errors were not harmless.  Plaintiff adds that these errors were "particularly egregious because both this Court and the Appeals Council noted in their June 2015 and August 2017 decisions, respectively, that Dr. Rocha examined Plaintiff on two separate occasions, yet the ALJ failed to even acknowledge the April 2011 evaluation in her decision."  (Doc. 19 at 10.)  Plaintiff also claims that this Court and the Appeals Council previously remanded with instructions for the "ALJ to

14

further consider the medical opinion evidence and RFC assessment" and,

"[d]espite guidance and instruction, the ALJ again issued a decision that did not

consider and evaluate all medical opinion evidence of record." (*Id.* at 10-11.)

Moreover, Plaintiff also argues that this error was not harmless because Dr.

Rocha's April 2011 evaluation showed that "the impairments diagnosed in

September 2012 were also diagnosed seventeen months beforehand, in April

2011." (*Id.* at 11 (*comparing* Tr. 439 *with* Tr. 572).)   Plaintiff also argues that Dr.

Goh's opinions are medical opinions under 20 C.F.R. § 404.1527(a)(1) and that

the Treating Source Orthopedic Questionnaire completed by Dr. Goh on March

17, 2011 "came directly from the State Agency." (*Id.* at 11-12.)  According to

Plaintiff, "[w]ithout evidence that the ALJ considered this highly probative

evidence at all, much less evaluated it consistent with the regulations, it cannot

be said that substantial evidence supports the ALJ's decision." (*Id.* at 12.)

Defendant, on the other hand, argues that Dr. Rocha's April 2011 disability

evaluation, after performing a consultative examination at the State agency's

request, did "not meet the Commissioner's definition of a 'medical opinion'"

because it failed to "express what Plaintiff could still do or mention work

limitations as required." (Doc. 23 at 5-6.)  Defendant also argues that even if the

evaluation record was a medical opinion, the ALJ committed harmless error by

failing to evaluate it. (*Id.* at 6.)  Moreover, Defendant argues that "[g]iven the way

Dr. Goh completed the [Treating Source Orthopedic] [Q]uestionnaire, it [did] not

qualify as a medical opinion, because it [did] not express what Plaintiff could still

do or mention work limitations as required." (*Id.* at 10.) Even if Dr. Goh's orthopedic questionnaire was a medical opinion, Defendant argues, the ALJ's error in not addressing the opinion was harmless because the ALJ's RFC was consistent with Dr. Goh's findings. (*Id.* at 10-11.)

The Court agrees that the ALJ's failure to evaluate Dr. Rocha's April 2011 opinion and Dr. Goh's March 2011 opinions precludes meaningful judicial review. In the absence of such an explanation or reasoning, it is impossible for the Court "to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." *Winschel*, 631 F.3d at 1179 (also noting that "when the ALJ fails to state with at least some measure of clarity the grounds for his decision, [the Court] will decline to affirm simply because some rationale might have supported the ALJ's conclusion"). Thus, the ALJ's failure to provide any rationale for ignoring Dr. Rocha's April 2011 evaluation and Dr. Goh's March 2011 opinions constitutes reversible error.

In the June 3, 2015 Memorandum Opinion and Order regarding ALJ Morgan's October 30, 2012 decision, this Court also pointed out that "[c]uriously, the ALJ failed to address Dr. Rocha's April 12, 2011 examination findings or mention that Plaintiff was first examined by Dr. Rocha at the Commissioner's request." (Tr. 814.) While not assigning any weight to Dr. Rocha's opinions, the Court notes that Dr. Rocha's April 2011 examination and findings appear to undermine the ALJ's reasoning for rejecting Dr. Rocha's September 2012 opinion, in particular that there was "no definitive medically determinable

impairment that persisted for any consecutive twelve-month period that would

serve as a basis for the opined limitations."  (Tr. 609.)  As noted by Plaintiff, Dr.

Rocha's September 2012 evaluation diagnosed the same or similar impairments

and symptoms that were noted in April 2011.  (*See* Tr. 439, 572.)  Moreover,

given the Appeal Council's instructions to the ALJ to specifically consider Dr.

Rocha's April 2011 opinions, the ALJ's silence on the matter precludes the Court

from finding that the ALJ's reasons for giving Dr. Rocha's opinions limited weight

are supported by substantial evidence.

The ALJ's failure to address Dr. Goh's opinions also constitute reversible

error.  As a treating physician, Dr. Goh's opinions were entitled to substantial

weight.  *See* 20 C.F.R. § 404.1527; *see also Lewis v. Callahan*, 125 F.3d 1436,

1440 (11th Cir. 1997).  Moreover, "the ALJ must provide 'good cause' for

rejecting a treating physician's medical opinions."  *Lawton v. Comm'r of Soc.*

*Sec.*, 431 F. App'x 830, 833 (11th Cir. 2011) (per curiam).  Although Dr. Goh's

opinions appear to support Plaintiff's testimony, the ALJ ignored these medical

opinions, and, thus, the Court is unable to determine whether the ALJ properly

weighed and discounted this evidence.  *See Meek v. Astrue*, No. 3:08-cv-317-J-

HTS, 2008 WL 4328227, at *1 (M.D. Fla. Sept. 17, 2008) ("Although an ALJ need

not discuss all of the evidence in the record, he may not ignore evidence that

does not support his decision . . . .  Rather, the judge must explain why

significant probative evidence has been rejected.")  (internal citations omitted);

*Lord v. Apfel*, 114 F. Supp. 2d 3, 13 (D.N.H. 2000) (stating that although the

Commissioner is not required to refer to every piece of evidence in his decision, the Commissioner may not ignore relevant evidence, particularly when it supports the claimant's position).

In light of this conclusion and the possible change in the RFC, the Court need not address Plaintiff's remaining arguments. *See Jackson v. Bowen*, 801 F.2d 1291, 1294 n.2 (11th Cir. 1986) (per curiam); *Freese v. Astrue*, 2008 WL 1777722, at *3 (M.D. Fla. Apr. 18, 2008); *see also Demenech v. Sec'y of the Dep't of Health and Human Servs.*, 913 F.2d 882, 884 (11th Cir. 1990) (per curiam). The ALJ will be directed to reconsider the opinions of Dr. Rocha and Dr. Goh, state the weight they are accorded, and the reasons therefor.

Accordingly, it is **ORDERED**:

1.      The Commissioner's decision is **REVERSED** pursuant to sentence four of 42 U.S.C. § 405(g) and **REMANDED** with instructions to the ALJ to: (a) reconsider the opinions of Dr. Rocha and Dr. Goh, explain what weight they are being accorded, and the reasons therefor; (b) reconsider the RFC assessment, if necessary; and (c) conduct any further proceedings deemed appropriate.

2.      The Clerk of Court is directed to enter judgment accordingly, terminate any pending motions, and close the file.

3.      In the event that benefits are awarded on remand, any § 406(b) or § 1383(d)(2) fee application shall be filed within the parameters set forth by the Order entered in *In re: Procedures for Applying for Attorney's Fees Under 42 U.S.C. §§ 406(b) & 1383(d)(2),* Case No.: 6:12-mc-124-Orl-22 (M.D. Fla. Nov.

13, 2012).  This Order does not extend the time limits for filing a motion for attorney's fees under the Equal Access to Justice Act, 28 U.S.C. § 2412.

**DONE AND ORDERED** in Jacksonville, Florida, on March 27, 2020.

MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:

Counsel of Record